**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAPRIOTTI'S SANDWICH SHOP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. _____ |
| | ) |
| TAYLOR FAMILY HOLDINGS, INC. and, | ) |
| NATALIE DELUCIA TAYLOR, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Capriotti's Sandwich Shop, Inc. ("Capriotti's"), for its Complaint against

Defendants Taylor Family Holdings, Inc. ("Taylor Family Holdings") and Natalie Delucia

Taylor ("Ms. Taylor"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for service mark infringement, unfair competition, breach of

contract, breach of guarantee, and unjust enrichment.  Capriotti's is the franchisor of the

Capriotti's Sandwich Shop® system and the owner of various federally-registered marks ("the

Capriotti's Marks").  Defendant Taylor Family Holdings, which is owned in part and controlled

by Defendant Natalie Delucia Taylor, operated a Capriotti's Sandwich Shop® restaurant

pursuant to a written franchise agreement with Capriotti's.  Notwithstanding the fact that

Capriotti's terminated this franchise agreement following a serious breach involving the misuse

of the Capriotti's Marks, Defendants continue to operate a Capriotti's Sandwich Shop®

restaurant at the same location under the same name, using Capriotti's Marks without

authorization.  Defendants' activities constitute infringement and violate multiple post-

termination provisions of the franchise agreement.  Capriotti's seeks preliminary and permanent injunctive relief, damages, and its attorneys' fees and costs.

## THE PARTIES

2.      Plaintiff Capriotti's Sandwich Shop, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  Capriotti's Sandwich Shop, Inc. became the franchisor of the Capriotti's Sandwich Shop® system pursuant to an Asset Purchase Agreement dated as of December 19, 2007 between it and Al-Lomar, Inc., a Delaware corporation that was the original franchisor of the Capriotti's Sandwich Shop® system.

3.      Upon information and belief, Defendant Taylor Family Holdings, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

4.      Upon information and belief, Defendant Natalie Delucia Taylor is a citizen of the State of Nevada and is President and partial owner of Taylor Family Holdings.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because certain of the claims arise out of the Lanham Act (15 U.S.C. §§ 1114 & 1125(a)).  This Court has supplemental jurisdiction over all remaining claims pursuant to 28 U.S.C. § 1367.  The underlying facts substantiating the Court's jurisdiction are set out in further detail below.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this District and because the parties have contractually consented to jurisdiction and venue in this Court.

## BACKGROUND

7.       The Capriotti's business was founded in Wilmington in 1986 by Lois and Alan

Margolet, sister and brother, who named the business after their maternal grandfather, Philip

Capriotti.  As originally developed by the Margolets, the concept was based on the use of high

quality ingredients and fresh preparation of unique sandwiches, including turkey roasted

overnight in the restaurant.  The Capriotti's business expanded to include more restaurants and

other members of the family in 1987; franchises were later offered to the public.  The history of

the Capriotti's business is described on its website:  www.capriottis.com/about/history2.html.  A

true copy of the historical information regarding the Capriotti's Sandwich Shop® business is

attached as Exhibit A to this Complaint.  Since its inception, the Capriotti's business has been

based on high quality, family-friendly food and service.  Capriotti's sandwiches include The

Bobbie®, a nationally acclaimed sandwich that includes homemade turkey, cranberry sauce,

stuffing and mayonnaise.

8.       Capriotti's is the owner of the name "Capriotti's," and of various trademarks and

service marks, including those that incorporate the "Capriotti's" name (the "Capriotti's Marks"

or "Marks").  The following Capriotti's Marks are registered with the United States Patent and

Trademark Office:

| Service Mark | Registration No. | Registration Date |
|---|---|---|
| CAPRIOTTI'S SANDWICH SHOP | 3,530,393 | November 11, 2008 |
| - EST. 1976 – CAPRIOTTI'S SANDWICH SHOP & Design  | 3,571,960 | February 10, 2009 |

| Service Mark | Registration No. | Registration Date |
|---|---|---|
| CAPRIOTTI'S & Design  | 3,015,434 | November 15, 2005 |
| THE BOBBIE & Design  | 2,273,912 | August 31, 1999 |
| THE "BOBBIE" | 3,622,413 | May 19, 2009 |

9.      Capriotti's proprietary names, logos, and Marks remain in full force and effect. Capriotti's has given public notice of the registration of the foregoing Capriotti's Marks as provided in 15 U.S.C. § 1111.  A true copy of the Certificates of Registration for these Capriotti's Marks is attached to this Complaint as Exhibit B.[1]

10.     Capriotti's and its predecessors have invested substantial sums in advertising and promoting the Capriotti's name, logo, and Marks.  As a result, the Capriotti's name, logo, and Marks have become famous and are strongly associated in the minds of the consuming public with the products and services offered by Capriotti's and its franchised system of Capriotti's Sandwich Shop® restaurants.  The Capriotti's name, logo, and Marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public, having won numerous awards, and constitute property of the greatest value to Capriotti's.

[1] The Certificates of Registration for THE BOBBIE & Design and CAPRIOTTI'S & Design are in the name of Al-Lomar, Inc., the former franchisor of the CAPRIOTTI'S SANDWICH SHOP ® system.  Ownership of these marks was transferred to Capriotti's pursuant to the Asset Purchase Agreement between Capriotti's and Al-Lomar, Inc.; this transfer of ownership has been recorded at the U.S. Patent and Trademark Office, as reflected in the Trademark Electronic Search System ("TESS") records for each registration.  Copies of the TESS printouts for the foregoing marks are attached to this Complaint as Exhibit C.

11.     Capriotti's offers and sells franchises providing the right to operate family-friendly Capriotti's Sandwich Shop® restaurants under a prescribed system that includes a distinctive layout and design, signage, specifications, and appearance; specific and uniform operating procedures, menus, recipes, and formulas; and proprietary methods and techniques for inventory and cost controls, recordkeeping and reporting, personnel management and training, purchasing, marketing, sales promotions, and advertising, as set out in a confidential and proprietary Manual (the "Capriotti's System").  At the present time, there are 75 franchised Capriotti's Sandwich Shop® restaurants in the United States.  Capriotti's also operates five Capriotti's Sandwich Shop® restaurants directly.  Capriotti's two largest markets are in Delaware, where Capriotti's was founded, and Nevada, where Defendants' restaurant is located.

## THE PARTIES' FRANCHISE AGREEMENT

12.     On March 17, 2003, Al-Lomar, Inc. and Taylor Family Holdings executed a Franchise Agreement (the "Franchise Agreement") pursuant to which Taylor Family Holdings was licensed to use the Capriotti's Marks and the Capriotti's System in connection with the operation of a Capriotti's Sandwich Shop® restaurant located at 4825 South Fort Apache Rd., Suite K, Las Vegas, Nevada 89147 (the "Restaurant").  A true copy of the Franchise Agreement for the Restaurant is attached to this Complaint as Exhibit D.

13.     Concurrent with the execution of the Franchise Agreement, Natalie Delucia Taylor, President of Taylor Family Holdings, executed a Franchise Guaranty Agreement (the "Guarantee"), under which she personally guaranteed the performance of Taylor Family Holdings under the Franchise Agreement.  A true copy of Ms. Taylor's Guarantee is attached to this Complaint as Exhibit E.

## TAYLOR FAMILY HOLDINGS' DEFAULTS AND THE TERMINATION OF THE FRANCHISE AGREEMENT

14.     The Franchise Agreement imposed various continuing obligations on Taylor Family Holdings, including the obligation to prevent unauthorized use of the Capriotti's name and Marks, and to maintain control over the quality of products sold in connection with the Capriotti's Marks.  Ex. D ¶ 5.

15.     The Franchise Agreement also required Taylor Family Holdings to use the Capriotti's Marks only in materials and on the goods and services specified and approved by Capriotti's, and to comply with Capriotti's requests regarding the appearance and use of the Capriotti's Marks.  Ex. D ¶¶ 5(d)-(e).  These provisions are included in the Franchise Agreement for the protection of both Capriotti's and its franchisees.

16.     In November 2011, Capriotti's learned that the "Crazy Horse III," a "gentlemen's club" featuring topless female dancers and alcoholic beverages, had begun offering a happy hour promotion in which customers could receive a Capriotti's The Bobbie® sandwich and a beer or a soda for $5.

17.     The Capriotti's-based promotion at the Crazy Horse III was widely publicized on the Internet and in a radio campaign, in a manner that traded on Capriotti's name and reputation and that falsely suggested that the promotion was sponsored by or authorized by Capriotti's, when that was not the case.  The promotion also directly associated the Capriotti's Marks with topless dancers.  For example, under the headline "Crazy Bobbie III" (combining the topless club's name with a registered Capriotti's Mark), the *Las Vegas Weekly* exclaimed: "It's a match made in Vegas heaven: boobs and Bobbies[®], that would be topless dancing at gentlemen's club Crazy Horse III and the famed Capriotti's Thanksgiving-in-a-roll sandwich…."  Similarly, the *Las Vegas Magazine Blog* published a headline "head over to Crazy Horse III & enjoy a

Capriotti's sandwich!" and exclaimed that "Guests will receive a delicious six-inch sandwich from celebrated sandwich shop, Capriotti's, along with a refreshing beer or soda for only $5." True copies of the *Las Vegas Weekly* and the *Las Vegas Magazine Blog* as published online are attached to this Complaint as Exhibits F and G, respectively.

18.     The *Las Vegas Magazine* and *Las Vegas Weekly* were not the only sources of adverse publicity for Capriotti's.  In the *Daily Fiasco*, the headline claiming that "Capriotti's Takes It Off" was accompanied by a photograph of a partially clothed dancer and a club patron holding a photoshopped sandwich, presumably meant to represent The Bobbie® sandwich.  The *Daily Fiasco* further stated that "[a]pparently Crazy Horse III is teaming up with Capriotti's to offer lap dance enthusiasts six-inch subs with a beer for five bucks."  A true copy of the promotional material in the November 17, 2011 *Daily Fiasco* is attached as Exhibit H to this Complaint.

19.     Capriotti's did not and would not have authorized anyone to use the Capriotti's Marks at a "gentlemen's club"; the statement that Capriotti's had "team[ed] up" to do so was false.  Upon investigation, however, Capriotti's learned that the Crazy Horse III had not acted independently in conceiving this unauthorized promotion.  Rather, it was Defendants who had, without authorization, "teamed up" with the Crazy Horse III to offer and promote Capriotti's Sandwich Shop® products, including The Bobbie® sandwich, in connection with the Crazy Horse III.  In addition to being unauthorized, Defendants' "teaming up" with the Crazy Horse III violated multiple provisions of the Franchise Agreement, including Paragraphs 5 and 8.  Ex. C ¶¶ 5, 8.  Defendants could not have possibly thought that the joint promotion of Capriotti's with the Crazy Horse III gentlemen's club would be acceptable to Capriotti's; Defendants proceeded nonetheless.

20.     By notice of default dated November 15, 2011, Capriotti's provided Defendants formal notice that their arrangement with the Crazy Horse III constituted a breach of the Franchise Agreement.  The notice stressed the potential damage to Capriotti's reputation and goodwill by Defendants' actions, and consistent with the default and termination provisions of the Franchise Agreement, [2] allowed five (5) days for the Defendants to cure the defaults by submitting proof in writing of the end of the improper relationship with Crazy Horse III and the termination of any advertisements or promotions linking Capriotti's and Crazy Horse III on any website or other media.  A true copy of the November 15, 2011 notice of default is attached to this Complaint as Exhibit I.[3]

21.     Defendants failed to respond to the notice of default, and did not cure the defaults of the Franchise Agreement as requested by Capriotti's.  To the contrary, the Crazy Horse III happy hour promotion that featured Capriotti's sandwiches (and unlawfully used the Capriotti's Marks) continued unabated, as did the undesired publicity surrounding such promotion.

22.     As a consequence of Defendants' failure to cure their defaults, counsel for Capriotti's transmitted a November 28, 2011 notice of termination to Defendants, which provided Defendants formal notice that, in light of their failure to abide by the obligations of the Franchise Agreement and to cure the defaults identified in the notice of default, the Franchise Agreement was terminated effective upon receipt of the notice.  A true copy of the November 28,

---

[2]  The Franchise Agreement is a Delaware contract, and by its terms is governed by Delaware law.  Ex. D ¶ 22. Pursuant to the Delaware Franchise Securities Act, Del. Code Tit. 6 § 2551 *et. seq.*, ninety days' notice is required prior to termination of a franchise agreement. *Id.* § 2554. However, that law, by its own terms, is applicable only to relationships where the franchise itself is operated within Delaware, which Defendants' franchise was not. *Id.* § 2551.

[3]  Through counsel, Capriotti's also transmitted a cease and desist demand to Crazy Horse III, demanding that it immediately stop the Capriotti's happy hour promotion and unauthorized use of Capriotti's Marks.  A true copy of the November 18, 2011 letter to Crazy Horse III is attached to this Complaint as Exhibit J.

2011 notice of termination is attached to this Complaint as Exhibit K.  The notice of termination

demanded, among other things, that Defendants promptly comply with the post-termination

contractual obligations set forth in the Franchise Agreement.

### DEFENDANTS' POST-TERMINATION
### OBLIGATIONS UNDER THE FRANCHISE AGREEMENT

23.     The Franchise Agreement sets forth various post-termination obligations

including discontinuation of use of the Capriotti's Marks and removal of the Marks from the

premises of the Restaurant.  Ex. D ¶ 5(f).

24.     In addition to the post-termination obligations set forth above, the Franchise

Agreement also includes a post-termination covenant not to compete, which restricts Defendants'

right to engage in any business competitive with the business of Capriotti's for a certain period

of time within a designated area.[4]  Ex. D ¶ 6, Exhibits C & D.

25.     This covenant not to compete is necessary to allow Capriotti's the opportunity to

re-establish its presence in the particular area served by the Restaurant location, to re-capture the

goodwill lost from Defendants' ceasing to operate as an authorized Capriotti's franchise, to

protect other Capriotti's franchises from unfair competition by Defendants, and to prevent the

unauthorized dissemination of Capriotti's confidential information.  In the November 28, 2011

notice of termination, Capriotti's informed Defendants of its intention to enforce this covenant.

26.     Shortly after Defendants' receipt of the November 28, 2011 notice of termination,

Defendants' representatives met with Capriotti's and expressed contrition for the Crazy Horse III

promotion.  Subsequently, however, Defendants, through counsel, contacted Capriotti's by letter

---

[4]  The relevant provisions of the Franchise Agreement restrict Defendants' ability to compete for
a period of three years within a 300 mile radius of the Restaurant.  Through this action,
Capriotti's seeks only to enforce the covenant for 2 years and 25 miles, which is the restriction
imposed in the current form of Capriotti's franchise agreement.

dated December 7, 2011.  Instead of accepting responsibility for the damage caused by the association between Capriotti's name and Marks and the Crazy Horse III, Defendants' December 7, 2011 letter purported to disavow any knowledge of the promotion and the intended use of the sandwiches provided to Crazy Horse III.  A true copy of Defendants' December 7, 2011 letter is attached to this Complaint as Exhibit L.

27.     By letter dated December 9, 2011, Capriotti's responded to Defendants' December 7, 2011 letter, and explained why Defendants' claim to be innocent bystanders in connection with the improper and unlicensed Crazy Horse III promotion was demonstrably false. A true copy of Capriotti's December 9, 2011 letter is attached to this Complaint as Exhibit M. The December 9, 2011 letter reiterated that Capriotti's had properly terminated the Franchise Agreement in light of the fact that Defendants had failed to timely and fully cure the defaults thereunder as requested in the November 15, 2011 notice of default, and that Defendants had no further right to operate the Restaurant as a Capriotti's Sandwich Shop® restaurant.  The December 9, 2011 letter also informed Defendants that Capriotti's was willing to purchase the assets associated with the Restaurant for $50,000, and that Defendants must inform Capriotti's of their intentions regarding such offer by December 19, 2011.

28.     As with the notice of default, Defendants failed to respond to the December 9, 2011 letter within the specified time, thereby rejecting Capriotti's offer to purchase the assets associated with the Restaurant.  By letter dated December 21, 2011, Capriotti's formally requested that Defendants immediately cease and desist operation of the Restaurant as a Capriotti's Sandwich Shop® and unauthorized use of the Capriotti's Marks.  A true copy of this December 21, 2011 letter is attached to this Complaint as Exhibit N.  Despite this final warning,

Defendants failed and refused to comply with Capriotti's demands and the contractual obligations set forth in the Franchise Agreement.

29.     In subsequent correspondence from Defendants' Delaware counsel dated December 30, 2011, Defendants again failed to accept Capriotti's request to cease operations, instead suggesting "maintain[ing] the status quo" and continuing to operate under the Franchise Agreement.  A true copy of Defendants' December 30, 2011 letter is attached to this Complaint as Exhibit O.

**DEFENDANTS' CONTINUING OPERATION OF THE RESTAURANT
IN VIOLATION OF CAPRIOTTI'S TRADEMARK RIGHTS AND
THE POST-TERMINATION CONTRACTUAL OBLIGATIONS**

30.     Despite Capriotti's termination of the Franchise Agreement effective with the November 28, 2011 notice of termination, Defendants have continued to operate the Restaurant using the proprietary Capriotti's Marks and Capriotti's System and to hold the Restaurant out to the consuming public as a Capriotti's franchise, in violation of the Franchise Agreement and Capriotti's rights.

31.     In the November 28, 2011 notice of termination, Capriotti's requested that Defendants return to Capriotti's all manuals, policy and procedure statements, instructions and other materials related to the operation of the Restaurant as a Capriotti's Sandwich Shop® restaurant.  However, Defendants have failed and refused to return these materials to Capriotti's. Rather, the confidential recipes, methods and procedures disclosed in the materials as part of the Capriotti's System are still in use at the Restaurant.

32.     Defendants have knowingly and willfully continued to use the Capriotti's Marks and the Capriotti's System in violation of Paragraph 5(f) of the Franchise Agreement.

33.     Defendants have knowingly and willfully violated their covenant not to compete in Paragraph 6 and Exhibits C and D of the Franchise Agreement by their continued operation of the Restaurant as set forth above.

34.     Defendants have knowingly and willfully failed and refused to de-identify the Restaurant, as required by Paragraph 5(f) of the Franchise Agreement.

**COUNT I**

**(Federal Service Mark Infringement Against Both Defendants)**

35.     Capriotti's incorporates the allegations contained in Paragraphs 1 through 34 above.

36.     Defendants' continued use of the Capriotti's Marks in connection with the operation of the Restaurant after termination of the Franchise Agreement is without right, license, or authorization.  Defendants have been put on notice of their obligation immediately to cease their unauthorized use of the Capriotti's Marks, but nonetheless have continued to use the Capriotti's Marks and to hold the Restaurant out to the consuming public as a Capriotti's Sandwich Shop® restaurant.

37.     Defendants' use of the Capriotti's Marks constitutes infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     Natalie Delucia Taylor, as owner, officer and/or agent of Taylor Family Holdings, knowingly and willfully directed or participated in the acts of infringement by Taylor Family Holdings, and is personally liable as an infringer.

39.     The public is likely to be confused, deceived, or otherwise misled by Defendants' infringement of the Capriotti's Marks.

40.    Capriotti's has been substantially and irreparably injured by Defendants'

infringement, and will continue to be substantially and irreparably injured unless and until

Defendants are preliminarily and permanently enjoined from infringing the Capriotti's Marks.

41.    In addition, Capriotti's has sustained actual damages as a direct and proximate

result of Defendants' willful and knowing infringement of the Capriotti's Marks in an amount to

be determined at trial.[5]

42.    Because Defendants' infringement is knowing and willful, this is an exceptional

case and Capriotti's is entitled to attorneys' fees and treble damages pursuant to 15 U.S.C.

§ 1117.

## COUNT II

### (Federal Unfair Competition Against Both Defendants)

43.    Capriotti's incorporates the allegations contained in Paragraphs 1 through 42

above.

44.    Defendants' unauthorized use of the Capriotti's Marks in connection with the

operation of the Restaurant after the termination of the Franchise Agreement constitutes a false

designation of origin and a false representation that the Restaurant is still sponsored by, approved

by, or otherwise affiliated with Capriotti's.  Capriotti's has given Defendants notice of their

obligation to cease the unauthorized use of the Capriotti's Marks and the Capriotti's System, but

Defendants have nonetheless continued to use them.

---

[5]  Paragraph 27 of the Franchise Agreement provides that, notwithstanding the general provision
providing for arbitration in Wilmington, in the event that the franchisee breaches the
noncompetition provisions and/or the provisions of the Agreement governing intellectual
property, Capriotti's is entitled to bring an action in court.  *See* Ex. D ¶ 27.  If such an action is
brought, Capriotti's may include damages claims pursuant to the terms of the Franchise
Agreement.  *Id.* Capriotti's does not waive its rights under the Franchise Agreement and the
Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, to demand arbitration on any claims that may be
asserted by Defendants subject to Paragraph 27 of the Franchise Agreement.

45.     Defendants' conduct constitutes unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     Natalie Delucia Taylor, as owner, officer, and/or agent of Taylor Family Holdings, knowingly and willfully directed or participated in the foregoing acts of unfair competition by Taylor Family Holdings.

47.     Defendants' unauthorized use of the Capriotti's Marks is likely to confuse, deceive, or otherwise mislead the public.

48.     Capriotti's has been substantially and irreparably injured by Defendants' acts of unfair competition, and will continue to be substantially and irreparably injured unless and until Defendants are preliminarily and permanently enjoined from engaging in these acts.

49.     In addition, Capriotti's has sustained actual damages as a direct and proximate result of Defendants' willful and knowing unfair competition in an amount to be determined at trial.

50.     Because Defendants' acts of unfair competition are knowing and willful, this is an exceptional case and Capriotti's is entitled to attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117.

## COUNT III

### (Breach of Contract Against Taylor Family Holdings)

51.     Capriotti's incorporates the allegations contained in Paragraphs 1 through 50 above.

52.     Taylor Family Holdings has breached the Franchise Agreement for the Restaurant in at least the following ways:

a.     Failing to comply with the post-termination obligations regarding use of the Capriotti's Marks contained in Paragraph 5 of the Franchise Agreement; and

b.     Continuing to operate the Restaurant, in violation of the covenant not to compete contained in Paragraph 6 of the Franchise Agreement.

53.     As a result of Taylor Family Holdings' breaches of the Franchise Agreement, Capriotti's has suffered damages and will continue to suffer actual damages in an amount to be proven at trial.

54.     In addition, Capriotti's has been substantially and irreparably injured by Taylor Family Holdings' failure to comply with the post-termination obligations contained in Paragraph 5 and the covenant not to compete in Paragraph 6 and Exhibit C of the Franchise Agreement, has no adequate remedy at law, and will continue to be substantially and irreparably injured unless and until Taylor Family Holdings is preliminarily and permanently enjoined from the breach of the post-termination obligations.

55.     Pursuant to Paragraph 19 of the Franchise Agreement, Capriotti's is entitled to reimbursement of attorneys' fees and litigation costs resulting from Defendants' breach of the Franchise Agreement.

## COUNT IV

### (Breach of Guarantee Against Natalie Delucia Taylor)

56.     Capriotti's incorporates the allegations contained in Paragraphs 1 through 55 above.

57.     Taylor Family Holdings has failed to comply with its post-termination obligations under the Franchise Agreement.

58.      Natalie Delucia Taylor agreed in the Guarantee to be bound personally by all of the covenants in the Franchise Agreement and to be personally responsible for any obligations owed to Capriotti's by Taylor Family Holdings.

59.      Natalie Delucia Taylor has failed to require Taylor Family Holdings to comply with its post-termination obligations.

60.      Capriotti's has been substantially and irreparably injured by Natalie Delucia Taylor's breach of the post-termination obligations under the Franchise Agreement and will continue to be substantially and irreparably injured unless and until Ms. Taylor is preliminarily and permanently enjoined.

61.      In addition, Capriotti's has sustained actual damages as a result of Natalie Delucia Taylor's breach of her personal guarantees of Taylor Family Holdings' obligations and liabilities under the Franchise Agreement in an amount to be determined at trial.

## COUNT V

### (Unjust Enrichment Against Both Defendants)

62.      Capriotti's incorporates the allegations contained in Paragraphs 1 through 61 above.

63.      Defendants' use of the Capriotti's Marks and Capriotti's System following expiration of the Franchise Agreement, without payment to Capriotti's of royalties and fees required of legitimate Capriotti's franchisees, has conferred a measurable benefit on Defendants at the expense of Capriotti's.  Defendants have appreciated this benefit, and retention of this benefit by Defendants is unjust and has resulted in unjust enrichment of Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Capriotti's demands judgment against Defendants Taylor Family

Holdings and Natalie Delucia Taylor, as follows:

1.      Ordering Defendants immediately to cease their infringing use of the Capriotti's

Marks;

2.      Ordering Defendants to de-identify the Restaurant and otherwise to comply with

the post-termination obligations contained in the Franchise Agreement as set forth above and

preliminarily and permanently enjoining Defendants from:

> a.      Directly or indirectly engaging in any business competitive with the
>
> business of a Capriotti's Sandwich Shop® restaurant, whether at 4825
>
> South Fort Apache Rd., Las Vegas, Nevada, or within a 25 mile radius of
>
> such address, for a period of 2 years from the date Defendants begin
>
> compliance with the covenant not to compete (as voluntarily modified by
>
> Capriotti's);
>
> b.      Operating the Restaurant as a Capriotti's Sandwich Shop® restaurant,
>
> using the Capriotti's Marks, or using the Capriotti's System;
>
> c.      Making any representation or statement that Defendants or the Restaurant
>
> are in any way approved, endorsed, or licensed by Capriotti's, or are
>
> affiliated with Capriotti's in any way;
>
> d.      Using and refusing to return to Capriotti's all originals and copies of
>
> Capriotti's confidential Manual, training aids, customer lists, records,
>
> files, instructions, correspondence, brochures, computer software,

computer diskettes and any other materials that have been loaned or

provided to Defendants by Capriotti's; and

e. Using any Capriotti's trade or service marks, including those marks

displayed on such items as slogans, symbols, computer formats, signs,

logos, advertising, stationery, and forms.

3. Ordering Defendants to file with the Court and serve on counsel for Capriotti's,

within three (3) days after entry of any preliminary injunction and/or final injunction issued

herein, an affidavit setting forth in detail, under oath, the manner and form in which Defendants

have complied with such injunction;

4. Awarding Capriotti's its damages arising from Defendants' breach of the post-

termination obligations contained in the Franchise Agreement;

5. Awarding Capriotti's its actual damages as a result of Defendants' service mark

infringement and unfair and deceptive conduct and competition;

6. Awarding Capriotti's treble damages as a result of Defendants' service mark

infringement and unfair and deceptive conduct and competition;

7. Awarding Capriotti's the amount by which Defendants have been unjustly

enriched by their wrongful use of the Capriotti's Marks and Capriotti's System;

8. Awarding Capriotti's prejudgment and post-judgment interest and its costs,

including, without limitation, its attorneys' fees, pursuant to the terms of the Franchise

Agreement, state law, and the Lanham Act;  and

9. Awarding Capriotti's such other and further relief as the Court deems just and

proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael L. Sturm
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC  20006
Tel:  (202) 719-7008
msturm@wileyrein.com


Dated:  January 17, 2012
1043111 / 38746

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Jonathan A. Choa (#5319)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      jchoa@potteranderson.com

*Attorneys for Plaintiff Capriotti's Sandwich Shop, Inc.*