# EXHIBIT I



5130 FORT APACHE RD
SUITE #215-411
LAS VEGAS, NV
89148

866.959.3737 P
702.736.9878 F

November 15, 2011

Natalie Delucia Taylor

Taylor Family Holdings, Inc.

4825 South Fort Apache, Suite K

Las Vegas, Nevada 89147

Re:     Notice to Cure
        Franchise Agreement

Dear Natalie:

You are hereby notified that you are in violation of the Franchise Agreement dated March 17, 2003 between Capriotti's Sandwich Shop, Inc. (as successor to Al-Lomar, Inc.) and Taylor Family Holdings, Inc. ("Franchise Agreement").  This letter shall serve as notice that you hereby have five (5) days from receipt of this letter to correct the following failures or we may terminate the Franchise Agreement.

In violation of Sections 5 and 8 of the Franchise Agreement, you have sold food to Crazy Horse III (an adult entertainment business) for resale to their patrons and allowed (either expressly or through your acquiescence) Crazy Horse III to use the Capriotti's name and trademarks (including trademarks registered with the United States Patent and Trademark Office) to publicize this arrangement on websites and/or via other media.

It is critical to maintaining the excellent reputation of all CAPRIOTTI'S System restaurants as represented by the service mark "CAPRIOTTI'S" that each franchisee strictly comply with the terms of the Franchise Agreement and Confidential Operations Manual.  Your sale of food to an adult entertainment business for resale and promotion to their customers and their use of the Capriotti's name and trademarks threaten to damage the reputation and goodwill of all existing and future CAPRIOTTI'S System restaurants.

In order to cure these defaults you must within five (5) days of your receipt of this letter submit proof in writing of the end of this relationship with Crazy Horse III and the termination of any advertisements or promotions linking Capriotti's Sandwich Shop and Crazy Horse III on any website or other media.

Your refusal or failure to take the actions set forth above within the above-specified time period will result in the immediate termination of your franchise.

Ms. Natalie Delucia Taylor
November 15, 2012
Page 2


IF WE ARE FORCED TO TERMINATE YOUR FRANCHISE AGREEMENT, PLEASE NOTE THAT YOU WILL NOT RECEIVE A REFUND OF ANY MONIES PAID TO FRANCHISOR OR ITS AFFILIATES TO DATE.   ADDITIONALLY, YOU WILL BE REQUIRED TO IMMEDIATELY DE-IDENTIFY THE FRANCHISED RESTAURANT, INCLUDING THE DELETION OF THE TRADEMARK "CAPRIOTTI'S" FROM ALL STATIONERY, SIGNS, BUSINESS CARDS AND THE LIKE, CANCEL YOUR YELLOW PAGES ADVERTISING, CHANGE YOUR TELEPHONE NUMBER, AND OTHER DE-IDENTIFICATION AS MAY BE REQUIRED BY FRANCHISOR PURSUANT TO THE FRANCHISE AGREEMENT. ADDITIONALLY, YOU WILL BE REQUIRED TO COMPLY WITH ALL COVENANTS NOT TO DISCLOSE AND COVENANTS NOT TO COMPETE AS SET FORTH IN THE FRANCHISE AGREEMENT.  YOU WILL ALSO BE RESPONSIBLE FOR ANY ACTUAL OR SPECIAL DAMAGES RESULTING FROM THE MISUSE OF THE CAPRIOTTI'S TRADEMARKS.


Please contact me to schedule a meeting to discuss this matter with Ashley.


Very truly yours,

Patrick K. Walls
Chief Operating Officer &
General Counsel


PKW/pat



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | .44 |
| Certified Fee | | 2.85 |
| Return Receipt Fee (Endorsement Required) | | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.59 |

Postmark
Here

11-15-11

Sent To  CAPRIOTTI'S (TAYLOR FAMILY HOLDINGS)
Street, Apt. No.; or PO Box No.  4825 S FORT APACHE RD. STE. K
City, State, ZIP+4  LAS VEGAS, NV 89147

7007 0710 0003 4081 1238

PS Form 3800, August 2006          See Reverse for Instructions

# EXHIBIT J



1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX  202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX  703.905.2820

www.wileyrein.com

November 18, 2011

Robert A. Smith
202.719.4481
rsmith@wileyrein.com

**VIA UPS OVERNIGHT**

Crazy Horse III
3525 W. Russell Road
Las Vegas, Nevada 89118

      Re:    Capriotti's The Bobbie® Sandwich Happy Hour Promotion

Dear Sir/Madam:

Please be advised that this law firm represents Capriotti's Sandwich Shop, Inc. ("Capriotti's"). As I believe you know, Capriotti's franchises and operates Capriotti's Sandwich Shops, which specialize in the preparation and service of high quality sandwiches, including The Bobbie® sandwich. I am writing regarding the new happy hour promotion at Crazy Horse III involving Capriotti's The Bobbie® sandwiches.

As you may know, Capriotti's is the owner of all right, title and interest in and to certain trademarks and service marks used in connection with Capriotti's Sandwich Shops. Capriotti's adopted and commenced use of CAPRIOTTI'S as a service mark in 1976, and the name has been used continuously and without interruption to the present day. Capriotti's is the owner of several CAPRIOTTI'S service mark registrations issued by the United States Patent and Trademark Office, including CAPRIOTTI'S & Design, Registration No. 3,015,434, issued on November 15, 2005; CAPRIOTTI'S SANDWICH SHOP, Registration No. 3,530,393, issued November 11, 2008; and – EST. 1976 – CAPRIOTTI'S SANDWICH SHOP & Design, Registration No. 3,571,960, issued February 10, 2009.

Capriotti's also is the owner of trademark registrations for "BOBBIE" marks, including THE BOBBIE & Design, Registration No. 2,273,912, issued August 31, 1999 and THE BOBBIE, Registration No. 3,622,413, issued May 19, 2009. Our client's marks, products and services are encountered daily by thousands of consumers. Capriotti's and its predecessor have spent millions of dollars advertising and promoting Capriotti's Sandwich Shops and the marks under which they operate; this investment has generated widespread and substantial goodwill in and public acceptance of the marks. Indeed, on the basis of our client's longstanding use of its CAPRIOTTI'S and THE BOBBIE marks in connection with Capriotti's Sandwich Shops, the marks are well known and immediately associated with our client and its products and services in the minds of consumers. That is particularly true in the Las Vegas market where there are almost 30 Capriotti's Sandwich Shops.

It has come to our attention that Crazy Horse III recently began offering a happy hour promotion in which customers can receive The Bobbie® sandwich and a beer or soda for $5. This happy hour promotion has been advertised or featured in various media resources, including online publications and the Crazy Horse III Facebook page. As a result, the



Crazy Horse III
November 18, 2011
Page 2

public has reason to believe that there is an affiliation between Crazy Horse III and Capriotti's Sandwich Shops, which is not the case.

We understand that the Capriotti's franchisee operating on South Fort Apache Road, Natalie Delucia Taylor, has been providing you with The Bobbie® sandwiches that are included in this happy hour promotion. Please be advised that Capriotti's has not authorized, nor does it condone, its franchisee providing Crazy Horse III with Capriotti's sandwich products for resale and redistribution. Indeed, Ms. Taylor's actions in facilitating this happy hour promotion for Crazy Horse III constitute a violation of her franchise agreement with Capriotti's.

Capriotti's has not authorized Crazy Horse III to distribute its sandwich products, nor has it authorized Crazy Horse III to use the CAPRIOTTI'S or THE BOBBIE service marks. Accordingly, please consider this letter a formal request from Capriotti's that you immediately cease The Bobbie® sandwich happy hour promotion, and refrain from further promotion thereof through any media outlet. The Bobbie® sandwich happy hour promotion falsely suggests a sponsorship or affiliation between Capriotti's and Crazy Horse III. Your continued offering of The Bobbie® sandwich happy hour promotion, or any other promotion involving Capriotti's products, risks causing great damage to our client and the operators of Capriotti's Sandwich Shops by tarnishing or degrading the positive associations the CAPRIOTTI'S and THE BOBBIE marks now enjoy among members of the public.

In view of the foregoing, we appreciate your cooperation in ceasing The Bobbie® sandwich happy hour special at Crazy Horse III and all promotion thereof through various media outlets and that you provide us written confirmation that you have ceased all use of the marks and promotional efforts. We also request that you make no further use of Capriotti's intellectual property, including the CAPRIOTTI'S and THE BOBBIE marks. Although we look forward to an amicable resolution of this matter, please note that if you fail to comply with these requests, Capriotti's reserves the right to take all steps necessary to protect its interests.

Thank you in advance for your cooperation. Please do not hesitate to contact me if you have any questions about this letter.

Sincerely,

Robert A. Smith

cc:   Patrick Walls, Esq.

**DUPLICATE SENT BY FIRST CLASS MAIL**

# EXHIBIT K



1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX  202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX  703.905.2820

www.wileyrein.com

Robert A. Smith
202.719.4481
rsmith@wileyrein.com

November 28, 2011

**VIA CERTIFIED MAIL**
**RETURN RECEIPT**

Ms. Natalie Delucia Taylor
Taylor Family Holdings, Inc.
4825 South Fort Apache, Suite K
Las Vegas, Nevada 89147

**NOTICE OF TERMINATION**

Re:     Capriotti's Sandwich Shop Franchise Agreement dated March 17, 2003
          ("Franchise Agreement")

Dear Ms. Taylor:

Please be advised that this firm represents Capriotti's Sandwich Shop, Inc. ("Capriotti's"). This Notice is being sent as formal notice that, due to the failure of Taylor Family Holdings, Inc. ("Taylor Family Holdings") to comply with the above-referenced Franchise Agreement, that Agreement is being terminated in accordance with its provisions.

Pursuant to the Franchise Agreement, Capriotti's (as successor to Al-Lomar, Inc.) granted Taylor Family Holdings the right to operate the Capriotti's Restaurant ("Restaurant") located at 4825 South Fort Apache Rd. Suite K, Las Vegas, Nevada 89147 ("Location"). The Franchise Agreement imposes various continuing obligations on Taylor Family Holdings, including the obligation to prevent against unauthorized use of the Capriotti's Name and Marks and to maintain and control the quality of products sold in connection with the Capriotti's Name and Marks.  In addition, Taylor Family Holdings agreed in the Franchise Agreement to use the Capriotti's Name and Marks only in materials and on the goods and services specified and approved by Capriotti's, and to comply with all of Capriotti's requests regarding the appearance and use of the Capriotti's Name and Marks.

By letter dated November 15, 2011 (copy attached), Capriotti's provided notice to Taylor Family Holdings that it was in default of the Franchise Agreement for selling Capriotti's products to Crazy Horse III (an adult entertainment establishment) for resale to Crazy Horse III patrons, and allowing Crazy Horse III to use the Capriotti's Name and Marks to publicize a Capriotti's happy hour promotion on websites and/or via other media. Consistent with the Franchise Agreement, Capriotti's granted Taylor Family Holdings five (5) days to cure this default by submitting proof in writing of **(a)** the end of Taylor Family Holdings' relationship with Crazy Horse III and **(b)** the termination of any advertisements or promotions linking Capriotti's, Capriotti's Sandwich Shops, and/or products sold at Capriotti's Sandwich Shops with Crazy Horse III on any website or other media.



Ms. Natalie Delucia Taylor
November 28, 2011
Page 2

As you know, the cure period has expired, and Taylor Family Holdings has failed to cure the above-identified default as requested by Capriotti's. Instead, since your receipt of the Notice of Default, the Crazy Horse III Capriotti's happy hour special has continued unabated. This situation risks causing great damage to Capriotti's and the operators of Capriotti's Sandwich Shops by tarnishing or degrading the positive associations the Capriotti's Name and Marks now enjoy among members of the public.

**Since Taylor Family Holdings has failed live up to its commitment to abide by the obligations of the Franchise Agreement and has failed to cure the default identified in the November 15 Notice, Capriotti's has no choice but to terminate the Franchise Agreement. Accordingly, please be advised that the Franchise Agreement is terminated effective upon your receipt of this Notice.**

Termination of the Franchise Agreement does not relieve Taylor Family Holdings of any liabilities or obligations under that Agreement, including obligations coming due after the date of this Notice, except as may be otherwise specified in the Franchise Agreement. This includes, but is not limited to, payment of all monies owed to Capriotti's. In addition, Taylor Family Holdings must fully comply with various post-termination obligations, which include, but are not limited to, the obligation to:

1.     Promptly cease operation of the Restaurant and thereafter not represent to the public or hold itself out as a Capriotti's franchisee.

2.     Permanently cease using, in any manner whatsoever, all confidential information, methods, procedures and techniques used by or associated with the Capriotti's System, the Marks and all other marks and distinctive forms, slogans, signs, symbols, logos and devices associated with the Capriotti's System.

3.     Immediately return to Capriotti's any property that is owned by Capriotti's, and either destroy or return to Capriotti's all signs, advertising materials, displays, stationery, forms and any other materials that bear or display the Marks.

4.     Take such actions as may be necessary to cancel any assumed name or similar registration that contains any Mark, and furnish Capriotti's with evidence satisfactory to Capriotti's of compliance with this obligation within thirty (30) days of the date of this Notice.

5.     Promptly pay all sums owed to Capriotti's. Taylor Family Holdings will be responsible for paying to Capriotti's all damages, costs and expenses, including reasonable attorneys' fees, incurred by Capriotti's as a result of its default and termination.

6.     Return to Capriotti's all Manuals, policy and procedure statements, instructions and other materials related to the operation of the Restaurant, including, without limitation, brochures, charts and other materials provided by Capriotti's, and all copies thereof.



**7.**     Comply with the covenants contained in the Franchise Agreement, including, but not limited to, the covenants not to use or disclose trade secrets or confidential information and the covenants not to engage in a business competitive with Capriotti's for the period provided in the Franchise Agreement.

Taylor Family Holdings should be aware that, under Section 11 of the Franchise Agreement, upon termination of the Franchise Agreement, it is not entitled to any refund of the Initial Franchise Fee.

Since the Franchise Agreement is now terminated, no additional royalty fees or other recurring payments to Capriotti's will accrue.  However, if Taylor Family Holdings continues to use the Marks, such use will constitute infringement entitling Capriotti's to damages.  Therefore, Capriotti's will retain any amounts received from Taylor Family Holdings as unapplied credits, which will be used to offset other amounts owed and/or any future judgment, regardless of how Taylor Family Holdings may designate the payments. In addition, if Taylor Family Holdings fails to cease operating the Restaurant as a Capriotti's Sandwich Shop and otherwise comply with its post-termination obligations, Capriotti's will pursue its rights to enforce those obligations.  Until compliance is achieved, Capriotti's may, at its discretion, continue to provide services to Taylor Family Holdings (including, without limitation, performing inspections and audits and allowing Taylor Family Holdings to continue to purchase proprietary products from approved suppliers) in an effort to protect the goodwill of the Marks and to ensure the quality of services provided to customers relying on those Marks.

Capriotti's retention of any funds it receives from Taylor Family Holdings or Capriotti's provision of any services to Taylor Family Holdings does not reinstate the terminated Franchise Agreement and should not be construed or in any way relied upon by Taylor Family Holdings as a waiver, suspension, or withdrawal of the termination of the Franchise Agreement or its defaults.  Regardless of the retention of any funds or the provision of any services, the Franchise Agreement has been terminated.

Please also be advised that if Taylor Family Holdings fails to cease operating the Restaurant immediately and meet the other post-termination obligations outlined above, Capriotti's reserves the right to take such actions as it deems appropriate to protect its rights.



Ms. Natalie Delucia Taylor
November 28, 2011
Page 4

Finally, as you should know, you have personally guaranteed the obligations of Taylor Family Holdings under the Franchise Agreement and, accordingly, are jointly and severally liable for the defaults of the Franchise Agreement.

Sincerely,

Robert A. Smith

Enclosure

**DUPLICATE SENT BY UPS OVERNIGHT**

cc:     Patrick K. Walls, Esq.
        Edward Delucia

# EXHIBIT L



# *SPILOTRO & KULLA,*

## *CHARTERED.*

*JOHN V. SPILOTRO, ESQ.* \*     *LISA M. SZYC, ESQ.*     *MARK A. KULLA, ESQ.* \*

### ATTORNEYS AT LAW
626 S. Third Street
Las Vegas, Nevada 89101
Telephone (702) 385-4994 Fax (702) 385-5125



## FAX MEMORANDUM

To:     Patrick K. Walls; Robert A. Smith

Fax Number:   702-736-9878; 202-719-7049

From:   Mark A. Kulla, Esq.

Re:     Taylor Family Holdings, Inc. Notice of Termination

Date:   December 7, 2011          Number of Pages (Including Cover Sheet): 4

Comments:     Attached please find correspondence with regard to the above-referenced

matter.

*If there are any problems with this transmission, please contact Amy at the above number*

*at your earliest convenience.*

**Original Will Follow In Mail**      [ X ]      **Pursuant To Your Request**      [ ]
**Original Will NOT Follow In Mail** [ ]      **Immediate Attention Requested**  [ ]

**CONFIDENTIALITY NOTE:** The documents accompanying this telecopy transmission contains information from the law firm of SPILOTRO & KULLA, CHARTERED, which is confidential of privileged. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this telecopied information is PROHIBITED. If you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

*\*Admitted in California and Nevada*



# SPILOTRO & KULLA, CHARTERED

**ATTORNEYS AT LAW**
626 South Third Street
Las Vegas, Nevada 89101

John V. Spilotro*
Mark A. Kulla*
Lisa M. Szyc

VIA U.S. MAIL & FACSIMILE

December 7, 2011

Patrick K. Walls
Chief Operating Officer &
General Counsel for Capriotti's
5130 Fort Apache Rd., Suite #215-411
Las Vegas, NV 89148
*Facsimile: 702-736-9878*

Robert A. Smith
Wiley Rein LLP
1776 K Street NW
Washington, D.C. 20006
*Facsimile: 202-719-7049*
*E-mail: rsmith@rileyrein.com*

RE:   Taylor Family Holdings, Inc. Notice of Termination

Dear Gentlemen:

Please accept this letter to confirm this firm represents Taylor Family Holdings, Inc.(hereinafter referred to as TFH) in the above-referenced matter. This letter shall constitute a denial of breach as alleged in your letters dated November 15, and November 28, 2011, respectively. Further this correspondence constitutes reaffirmation of cure pursuant to the terms of the Franchise Agreement.

On November 8th, 9th, 10th, 11th and 12th, TFH sold sandwiches to Crazy Horse III. A total of thirty sandwiches were sold in those five days constituting an average of 6 (six) sandwiches per day. The TFH was unaware that Crazy Horse III would be reselling these sandwiches to patrons. Instead, the Franchisee believed these sandwiches were for employees. In fact, on the second day of sale, Ms. Taylor was contacted and a request was made to hold onions on all sandwiches because it affected the dancers' breath. Additionally, Ms. Taylor's conversations with Skip Waughstreet from the Crazy Horse III included the admonition that should he desire to purchase sandwiches for patrons, he would have to clear any such use and or advertising with corporate and obtain corporate approval in writing.

Ms. Taylor was unaware the Crazy Horse III intended to use Capriotti's trade name and/or resell such sandwiches to patrons. On November 13, 2011 Ms. Taylor received a call from Ashley Morris at Capriotti's wherein Mr. Morris indicated concern regarding the sale of sandwiches to Crazy Horse III. Mr. Morris told Natalie that she

*Admitted in California and Nevada • Telephone (702) 385-4994 • FAX (702) 385-5125

Ltr. Re: TFH Notice of Termination
December 7, 2011
Page 2

should discontinue the sale of such products. Immediately following this conversation, Ms. Taylor contacted Mr. Waughstreet and told him that she would no longer be selling sandwiches to him or his employees, based upon her conversation with Mr. Morris and the indication that Crazy Horse III may have been using the trade name in any fashion without permission.

It is TFH's position that immediately discontinuing the sale of sandwiches as directed by Mr. Morris is consistent with paragraph 5 of the Franchise Agreement requiring the Franchisee, to the extent possible, to prevent persons from the unauthorized use of the Franchisor's name or product. TFH did not allow Crazy Horse III to use Capriotti's name or marks. Nor did TFH allow Capriotti's name to be used for a happy hour promotion on websites or other media.

You state TFH failed to cure default by submitting proof in writing regarding the end of the Franchisee's relationship with Crazy Horse III. As indicated above, the default was cured immediately upon verbal notice from Ashley Morris. There is no requirement in the Franchise Agreement that requires the Franchisee confirm proof in writing within 5 days in order to cure the default. Ms. Taylor is also aware that Ashley Morris has had a number of conversations with the Crazy Horse III presumably to terminate any continued advertising of the happy hour. The Crazy Horse III's unauthorized use of Capriotti's trademark and name constitutes an act of a third party beyond which TFH and its principles have control.

In reviewing this matter, I requested Ms. Taylor to provide me with the Franchise Disclosure Document she received at the time she entered into negotiations for the acquisition of the Capriotti's franchise. It is my understanding that no such disclosure document was provided. Additionally, the Franchise Agreement indicates it is a Delaware contract and is to be covered and construed in accordance with the laws of the state of Delaware. Should that choice of law provision be upheld, as Court's have found in the past, then the Delaware Franchise Security Law would be applicable and govern the notice to terminate. Pursuant to §2554 of Title 6, notwithstanding any provision in the Franchise Agreement which provides otherwise, any termination of a Franchise or election not to renew must be made on at least 90 days notice.

Ms. Taylor and Taylor Family Holdings have complied with the terms of the Franchise Agreement since 2003. She and her company are proud to be a part of the Capriotti's family and also desire to preserve and promote the name, trademark, and product of Capriotti's. A TFH representative has also served on the advertising committee for Capriotti's in the past. TFH would request at this time that the matter be resolved and that Capriotti's withdraw its Notice of Termination.

Taylor Family Holdings has received an indication from Mr. Morris that he would be preparing documents that he would be proposing some resolution to these issues. This indication was made Thursday of last week. To date, TFH has not received anything

Ltr. Re: TFH Notice of Termination
December 7, 2011
Page 3

additional from Mr. Morris. It is TFH sincere desire to resolve this matter short of legal action whether commenced in Nevada or in Delaware, if appropriate.

I look forward to your prompt response and will calendar such seven days from the date of this letter.

Sincerely,

Spilotro & Kulla, Chartered
MARK A. KULLA, ESQ.

MAK:me

# EXHIBIT M



1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX  202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX  703.905.2820

www.wileyrein.com

Robert A. Smith
202.719.4481
rsmith@wileyrein.com

December 9, 2011

**VIA U.S. MAIL AND FACSIMILE (702) 385-5125**

Mark A. Kulla, Esq.
Spilotro & Kula
626 South Third Street
Las Vegas, Nevada 89101

Re:   Taylor Family Holdings, Inc. Notice of Termination

Dear Mr. Kulla:

As you know, this firm represents Capriotti's Sandwich Shop, Inc. ("Capriotti's").  I am in receipt of your December 7 letter regarding Capriotti's recent termination of the Franchise Agreement of your client, Taylor Family Holdings, Inc. ("Taylor Family Holdings").

Your letter contains an assortment of falsehoods, half-truths and serious mischaracterizations.  The most troubling inaccuracy is the assertion that Natalie Taylor was unaware that Crazy Horse III would be reselling Capriotti's sandwiches to its patrons – and went so far as to admonish her contact at Crazy Horse III "that should he desire to purchase sandwiches for patrons, he would have to clear any such use and[/]or advertising with corporate and obtain corporate approval in writing."  It is quite curious that Crazy Horse III was ordering sandwiches from your client, whose Capriotti's Sandwich Shop is located 12 miles away, and more distant than a number of other Capriotti's locations.  At a minimum, such circumstances should have raised red flags for Ms. Taylor.  In any event, contrary to the assertions in your letter, Capriotti's investigation has determined that Ms. Taylor was fully aware of the intended purpose of the sandwiches she provided to Crazy Horse III, and in fact explicitly authorized use of the sandwiches by Crazy Horse III as part of the previously-discussed promotion.  For Ms. Taylor to now claim that she was unaware of the intended purpose of the large quantity of sandwiches ordered daily by Crazy Horse III is disingenuous at best.

Your letter further asserts that Ms. Taylor stopped providing sandwiches to Crazy Horse III after her conversation with Ashley Morris on November 13.  We note, however that the Capriotti's promotion continued at Crazy Horse III  as late as November 20th – 5 days after Capriotti's sent a Notice to Cure to Taylor Family Holdings regarding the unapproved sales.  In any event, your letter concedes that your client utterly failed to comply with the actions identified in the Notice to Cure as necessary to cure the defaults.  Specifically, that Notice specified that, in order to cure, your client must "submit proof in writing of the end of this relationship with Crazy Horse III and the termination of any advertisements or promotions linking Capriotti's Sandwich Shop and Crazy Horse III on any website or other media."  The Notice further made clear that the failure to abide by such actions would result in the immediate termination of the franchise.  Accordingly, even if your client had discontinued



Mark A. Kulla, Esq.
Spilotro & Kula
December 9, 2011
Page 2

its offending behavior within the deadline set by the Notice of Cure it did not comply with the explicit steps established by Capriotti's to cure such default. Contrary to your protestations, this failure properly resulted in the termination of your client's Franchise Agreement. It is simply not Capriotti's duty to divine whether a franchisee has satisfactorily resolved its defaults of a franchise agreement, it is the franchisee's duty to certify that such defaults have been fully cured.

Your letter also complains that Taylor Family Holdings did not receive a franchise disclosure document prior to signing its Franchise Agreement in 2003. Even if this allegation had merit, your client has no legal recourse for any such failure, since no private right of action is available to it. Moreover, we are far beyond any applicable statute of limitations, even if a private right of action were available. Finally, it is hard to see what damages your client could possibly assert it has incurred as a result of the alleged non-disclosure.

Turning to your assertions regarding Delaware law, you are quite correct that the Franchise Agreement provides that it is to be interpreted and construed in accordance with the laws of the state of Delaware. You are also correct in noting that the Delaware Franchise Security Law requires that any termination of a franchise or election not to renew be made on at least 90 days' notice. However, you appear to have overlooked the jurisdictional prerequisites of the Law, which specify that the Law applies to contracts "*governing the business relationship within th[e] State*" between a franchisor and a "franchised distributor" which is an individual or entity "*with a place of business within the State.*" Given your client's residence, and operation of its Store, in Nevada, any suggestion that the Delaware Franchise Security Law restricts Capriotti's termination rights is simply unavailing.

As clearly set forth in my November 28 Notice of Termination, the Franchise Agreement between Capriotti's and Taylor Family holdings has been terminated. Accordingly, your client has no further right to operate the Store or hold itself out as a Capriotti's franchisee. Please be advised that Capriotti's is willing to pay your client $50,000 to purchase the assets and lease associated with the Store. Taylor Family Holdings must notify Capriotti's of its intentions regarding this offer by **December 19, 2011**. If your client declines Capriotti's offer, it must immediately cease operation of the Store and comply with the various post-termination obligations detailed in my November 28 Notice.

Capriotti's is extremely disappointed that your client is compounding the harm that it caused by its inappropriate actions by refusing to accept that the Franchise Agreement has been validly terminated. Please advise your client that if it fails to cease operating the



Mark A. Kulla, Esq.
Spilotro & Kula
December 9, 2011
Page 3


Store as set forth above and satisfy the required post-termination obligations, Capriotti's will take all actions as it deems appropriate to protect its rights. In such event, please remind your client that it is liable for all damages resulting from its breach of obligations set forth in the Franchise Agreement, including Capriotti's attorneys' fees, costs of litigation, future lost royalties, and other damages and remedies. Please further remind Ms. Taylor that she personally guaranteed Taylor Family Holdings' obligations under the Franchise Agreement, and therefore is jointly and severally liable for the defaults of the Franchise Agreement, and any claims Capriotti's has against Taylor Family Holdings in connection with the termination of the Franchise Agreement.

Sincerely,

Robert A. Smith

cc:     Patrick K. Walls, Esq.

# EXHIBIT N



**Wiley Rein LLP**

1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX   202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX   703.905.2820

www.wileyrein.com

Robert A. Smith
202.719.4481
rsmith@wileyrein.com

December 21, 2011

**VIA UPS OVERNIGHT AND FACSIMILE (702) 385-5125**

Mark A. Kulla, Esq.
Spilotro & Kulla
626 South Third Street
Las Vegas, Nevada 89101

<u>**CEASE AND DESIST NOTICE**</u>

Re:    Terminated Capriotti's Sandwich Shop Franchise Agreement dated
       March 17, 2003 ("Franchise Agreement") for the Capriotti's Sandwich
       Shop located at 4825 South Fort Apache Rd., Suite K, Las Vegas,
       Nevada 89147

Dear Mr. Kulla:

As you know, this firm represents Capriotti's Sandwich Shop, Inc. ("Capriotti's").  I am writing to demand that your client, Taylor Family Holdings, Inc. ("Taylor Family Holdings"), immediately cease operating the Capriotti's Sandwich Shop at the above-referenced location and refrain from any further use of Capriotti's Proprietary Marks and other intellectual property.

By Notice of Termination dated November 28, 2011 ("Notice"), Capriotti's terminated the Franchise Agreement following Taylor Family Holdings' failure to timely cure its defaults thereunder.  The Notice demanded that Taylor Family Holdings immediately cease operating the Capriotti's Sandwich Shop ("Store") at the above-referenced location, discontinue use of the Proprietary Marks, pay all monies owed to Capriotti's, and comply with other post-termination obligations.  In my letter to you dated December 9, 2011 (copy attached), Capriotti's offered, among other things, to pay Taylor Family Holdings $50,000 to purchase the assets and lease associated with the Store.  The December 9 letter clearly indicated that Taylor Family Holdings must inform Capriotti's of its intentions regarding the purchase offer no later than <u>December 19, 2011</u>, and that if the offer was rejected, Taylor Family Holdings must immediately cease operation of the Store and comply with the various post-termination obligations detailed in the Notice.  As of today's date, your client has not accepted Capriotti's offer to purchase the assets associated with the Store; further, despite the termination of the Franchise Agreement, your client is continuing to operate the Store as if it were still a franchised Capriotti's Sandwich Shop and to use Capriotti's Proprietary Marks.

Capriotti's is the owner of several CAPRIOTTI'S service mark registrations issued by the United States Patent and Trademark Office, including CAPRIOTTI'S & Design, Registration No. 3,015,434, issued on November 15, 2005; CAPRIOTTI'S SANDWICH



Mark A. Kulla, Esq.
Spilotro & Kula
December 21, 2011
Page 2

SHOP, Registration No. 3,530,393, issued November 11, 2008; and – EST. 1976 – CAPRIOTTI'S SANDWICH SHOP & Design, Registration No. 3,571,960, issued February 10, 2009. Use of the Proprietary Marks is permitted only by Capriotti's and its current licensees/franchisees. With the termination of the Franchise Agreement, Taylor Family Holdings no longer is authorized to use the Proprietary Marks. Given the widespread use of the Proprietary Marks by Capriotti's and its franchisees and licensees, and the extensive advertising and publicity associated with the marks, your client's unauthorized use of the Proprietary Marks is likely to cause confusion, mistake, and deception among the consuming public, and therefore constitutes federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and federal dilution under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), as well as a violation of analogous state statutes.

Please be advised that this letter constitutes Capriotti's one final effort to resolve this matter amicably. If Taylor Family Holdings is interested in an amicable resolution, it must: (1) immediately cease operating the Store as a Capriotti's Sandwich Shop; (2) cease all use of the Proprietary Marks, remove the Proprietary Marks from the premises of the Store, and refrain from using the Proprietary Marks in the future; (3) within 10 days, provide a written certification and photographic evidence that it has ceased operating the Store as a Capriotti's Sandwich Shop and that it has ceased all uses of the Proprietary Marks; and (4) promptly comply with the other post-termination obligations detailed in the November 28 Notice, including the return of the Capriotti's confidential and proprietary materials and payment of all monies owed to Capriotti's.

If Taylor Family Holdings immediately complies with these demands, as requested above, and provides proof of compliance within 10 days of the date of this letter, no further action will be taken. In the absence of your client's voluntary compliance with its legal obligations, Capriotti's will aggressively pursue its rights and avail itself of all appropriate remedies under federal law, including seeking preliminary and permanent injunctive relief, damages, profits, costs and attorneys' fees, and all remedies available under applicable state law and common law.

Please remind your client that it is liable for all damages resulting from its breach of obligations set forth in the Franchise Agreement, including Capriotti's attorneys' fees, costs of litigation, future lost royalties, and other damages and remedies. Please further remind Ms. Taylor that she personally guaranteed Taylor Family Holdings' obligations under the Franchise Agreement, and therefore is jointly and severally liable for the defaults of the Franchise Agreement, and any claims Capriotti's has against Taylor Family Holdings in connection with the termination of the Franchise Agreement.



Mark A. Kulla, Esq.
Spilotro & Kula
December 21, 2011
Page 3


Please contact me if you have any questions concerning the matters addressed in this letter.

Sincerely,

Robert A. Smith


Enclosure

cc:     Ashley Morris
        Patrick K. Walls, Esq.



1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX    202.719.7049

7925 JONES BRANCH DRIVE
McLEAN, VA 22102
PHONE  703.905.2800
FAX    703.905.2820

www.wileyrein.com

Robert A. Smith
202.719.4481
rsmith@wileyrein.com

December 9, 2011

**VIA U.S. MAIL AND FACSIMILE (702) 385-5125**

Mark A. Kulla, Esq.
Spilotro & Kula
626 South Third Street
Las Vegas, Nevada 89101

      Re:    Taylor Family Holdings, Inc. Notice of Termination

Dear Mr. Kulla:

As you know, this firm represents Capriotti's Sandwich Shop, Inc. ("Capriotti's"). I am in receipt of your December 7 letter regarding Capriotti's recent termination of the Franchise Agreement of your client, Taylor Family Holdings, Inc. ("Taylor Family Holdings").

Your letter contains an assortment of falsehoods, half-truths and serious mischaracterizations. The most troubling inaccuracy is the assertion that Natalie Taylor was unaware that Crazy Horse III would be reselling Capriotti's sandwiches to its patrons – and went so far as to admonish her contact at Crazy Horse III "that should he desire to purchase sandwiches for patrons, he would have to clear any such use and[/]or advertising with corporate and obtain corporate approval in writing." It is quite curious that Crazy Horse III was ordering sandwiches from your client, whose Capriotti's Sandwich Shop is located 12 miles away, and more distant than a number of other Capriotti's locations. At a minimum, such circumstances should have raised red flags for Ms. Taylor. In any event, contrary to the assertions in your letter, Capriotti's investigation has determined that Ms. Taylor was fully aware of the intended purpose of the sandwiches she provided to Crazy Horse III, and in fact explicitly authorized use of the sandwiches by Crazy Horse III as part of the previously-discussed promotion. For Ms. Taylor to now claim that she was unaware of the intended purpose of the large quantity of sandwiches ordered daily by Crazy Horse III is disingenuous at best.

Your letter further asserts that Ms. Taylor stopped providing sandwiches to Crazy Horse III after her conversation with Ashley Morris on November 13. We note, however that the Capriotti's promotion continued at Crazy Horse III as late as November 20th – 5 days after Capriotti's sent a Notice to Cure to Taylor Family Holdings regarding the unapproved sales. In any event, your letter concedes that your client utterly failed to comply with the actions identified in the Notice to Cure as necessary to cure the defaults. Specifically, that Notice specified that, in order to cure, your client must "<u>submit proof in writing of the end of this relationship with Crazy Horse III and the termination of any advertisements or promotions linking Capriotti's Sandwich Shop and Crazy Horse III on any website or other media</u>." The Notice further made clear that the failure to abide by such actions would result in the immediate termination of the franchise. Accordingly, even if your client had discontinued



Mark A. Kulla, Esq.
Spilotro & Kula
December 9, 2011
Page 2

its offending behavior within the deadline set by the Notice of Cure it did not comply with the explicit steps established by Capriotti's to cure such default.   Contrary to your protestations, this failure properly resulted in the termination of your client's Franchise Agreement.   It is simply not Capriotti's duty to divine whether a franchisee has satisfactorily resolved its defaults of a franchise agreement, it is the franchisee's duty to certify that such defaults have been fully cured.

Your letter also complains that Taylor Family Holdings did not receive a franchise disclosure document prior to signing its Franchise Agreement in 2003.   Even if this allegation had merit, your client has no legal recourse for any such failure, since no private right of action is available to it.   Moreover, we are far beyond any applicable statute of limitations, even if a private right of action were available.   Finally, it is hard to see what damages your client could possibly assert it has incurred as a result of the alleged non-disclosure.

Turning to your assertions regarding Delaware law, you are quite correct that the Franchise Agreement provides that it is to be interpreted and construed in accordance with the laws of the state of Delaware.   You are also correct in noting that the Delaware Franchise Security Law requires that any termination of a franchise or election not to renew be made on at least 90 days' notice.   However, you appear to have overlooked the jurisdictional prerequisites of the Law, which specify that the Law applies to contracts *"governing the business relationship within th[e] State"* between a franchisor and a "franchised distributor" which is an individual or entity *"with a place of business within the State."* Given your client's residence, and operation of its Store, in Nevada, any suggestion that the Delaware Franchise Security Law restricts Capriotti's termination rights is simply unavailing.

As clearly set forth in my November 28 Notice of Termination, the Franchise Agreement between Capriotti's and Taylor Family holdings has been terminated.   Accordingly, your client has no further right to operate the Store or hold itself out as a Capriotti's franchisee. Please be advised that Capriotti's is willing to pay your client $50,000 to purchase the assets and lease associated with the Store.   Taylor Family Holdings must notify Capriotti's of its intentions regarding this offer by **December 19, 2011**.   If your client declines Capriotti's offer, it must immediately cease operation of the Store and comply with the various post-termination obligations detailed in my November 28 Notice.

Capriotti's is extremely disappointed that your client is compounding the harm that it caused by its inappropriate actions by refusing to accept that the Franchise Agreement has been validly terminated.   Please advise your client that if it fails to cease operating the



Mark A. Kulla, Esq.
Spilotro & Kula
December 9, 2011
Page 3

Store as set forth above and satisfy the required post-termination obligations, Capriotti's will take all actions as it deems appropriate to protect its rights. In such event, please remind your client that it is liable for all damages resulting from its breach of obligations set forth in the Franchise Agreement, including Capriotti's attorneys' fees, costs of litigation, future lost royalties, and other damages and remedies. Please further remind Ms. Taylor that she personally guaranteed Taylor Family Holdings' obligations under the Franchise Agreement, and therefore is jointly and severally liable for the defaults of the Franchise Agreement, and any claims Capriotti's has against Taylor Family Holdings in connection with the termination of the Franchise Agreement.

Sincerely,

Robert A. Smith

cc:     Patrick K. Walls, Esq.

# EXHIBIT O

# ELZUFON AUSTIN REARDON
# TARLOV & MONDELL, P.A.

ATTORNEYS & COUNSELORS AT LAW

| | | |
|---|---|---|
| JOHN A. ELZUFON | BARBARA SNAPP DANBERG | 300 DELAWARE AVENUE |
| JEFFREY M. AUSTIN | GARY W. ALDERSON | SUITE 1700, P.O. BOX 1630 |
| MARK L. REARDON | ANDREA C. RODGERS | WILMINGTON, DELAWARE, 19899-1630 |
| EDWARD A. TARLOV | DEBORAH J. GALONSKY | PHONE: 302.428.3181 |
| SCOTT R. MONDELL | PENELOPE B. O'CONNELL | FACSIMILE: 302.428.3180 |
| LARRY J. TARABICOS | KRISTA REALE SAMIS | INTERNET: WWW.ELZUFON.COM |
| H. GARRETT BAKER | ANDREW J. CARMINE | WRITERS E-MAIL: JELZUFON@ELZUFON.COM |
| ROBERT H. RICHTER | PETER S. MURPHY | |
| COLLEEN D. SHIELDS | NATHAN V. GIN | |
| JOEL M. DONER | BRIAN D. TOME | |
| ROGER L. TRUEMPER | GEOFFREY L. GROSSO | |
| SCOTT A. SIMPSON | CHRISTOPHER C. POPPER | |
| CHRISTIAN G. MCGARRY | | |
| MATTHEW P. DONELSON | | |

SENIOR COUNSEL:
FRANCIS J. TRZUSKOWSKI
JAMES F. KIPP

December 30, 2011

**VIA E-MAIL – rsmith@wileyrein.com**
**and FIRST-CLASS MAIL**
Robert A. Smith, Esquire
Wiley Rein LLP
1776 K Street, NW
Washington, DC  20006

> **Re:**   **Taylor Family Holdings, Inc. Notice of Termination**
> **Capriotti's Sandwich Shop Franchise Agreement dated March 17, 2003**
> **EARTM #270084.25490**

Dear Robert:

As you know, this office, along with Mark Kulla, represents Taylor Family Holdings with regard to the dispute that presently exists between it, as franchisee, and Capriotti's, as franchisor.

As you are probably aware, at a recent meeting between Ashley Morris and Natalie De Lucia, Mr. Morris advised Natalie that if the franchisee did not cease and desist then Capriotti's, as franchisor, will file a TRO and whatever else it felt was necessary to protect its rights.

The expense of pursuing preliminary injunctive relief in Delaware or Nevada does not appear to be in either of our clients' best interests.  Therefore, we are proposing that we reach an interim agreement to maintain the status quo.  We anticipate that such agreement would permit Ms. De Lucia to continue to operate her franchise while still meeting her obligations to your client under the franchise agreement.  We propose that such agreement remain in effect while we explore whether an amicable solution is achievable through negotiation and, in the event that a compromised agreement becomes hopeless, we would propose that the standing agreement remain in effect while we explore whether mediation, arbitration or litigation is the appropriate

Robert A. Smith, Esquire
*Taylor Family Holdings, Inc.*
December 30, 2011
Page 2 of 2

mechanism for achieving resolution and for the duration of any such litigation.  If your client is disinclined to agree, we regret that we will be forced to go on the offensive with the initiation of an adversary proceeding in Delaware Chancery Court where our client will seek to avail herself of all the statutory remedies available.

Our client's adversary claim will raise as an issue the fact that we believe our client has been contributing to a "national advertising fund" through payment of inflated prices for food costs charged by recently approved vendors and monthly deductions from our client's bank account on a percentage basis.  Such fees were never disclosed in the FA and, in pursuit of this claim, we will be requesting an immediate accounting of all monies paid by our client under the FA as well as an explanation for the substantial inflation of food costs charged by Sysco and other vendors.

Again, it is our hope that this can be resolved amicably and, as stated in my prior letter feel free to contact me (302-504-3221) or Mark Kulla (702-385-4994).  If you have any questions, please call.

Very truly yours,

JOHN A. ELZUFON

JAE/bgb

cc:   Mark A. Kulla, Esquire – via e-mail, attorney@lasvegas.net
      Natalie De Lucia – via e-mail, ndelucia13@gmail.com
      Colleen D. Shields, Esquire – via e-mail, cshields@elzufon.com
      Peter S. Murphy, Esquire – via e-mail, pmurphy@elzufon.com

G:\Docs\CLIENT\270084\25490\LET\00714113.DOC